Case number 22-6492, Bador v. Garland Mr. DeGraff, I'm going to re-read. Thank you. May it please the court, and thank you very much for the opportunity to present oral argument this morning. On behalf of my client, Mr. Bador, Shlomo Bador, who seeks a 237-A1H waiver under the Immigration and Nationality Act for fraud that he committed in the engagement of marriage fraud, which he openly admitted in immigration court. And you might ask, well, gosh, why would we reward somebody who has openly committed fraud and even admitted it to the immigration judge and testified? You can see in the transcript how he testified one way and then testified another way once after a certain immigration investigation was made known to him. And that's because INA 237-A1H makes this waiver available to people in removal proceedings. It's an expansive waiver that authorizes a waiver for misrepresentations, and it refers to the provisions of the paragraph relating to the removal of aliens who commit fraud. And so... Mr. Bador wasn't charged as a victim of fraud or failure to remove the conditions or his conditional status as a resident, right? That's an excellent question. Thank you so much. And that is exactly what the board is relying on here, and the government hammers time and time again in its brief. They want to point to page 463 of the administrative record the decision where it states that USCIS, the agency department of homeland security, had denied the initial I-751 joint petition to remove conditions on residents essentially because the petitioner withdrew it. But that's not, in fact, what denied the very first petition. The decision cited at page 463 of the administrative record is, in fact, a decision dated 2016, if I'm not mistaken, which basically says, yes, July 16, 2016, and you'll find it at several places, which is the denial of the second petition from which he filed after the events of the first petition. And it refers heavily... I guess the point is that neither of those are removal for being inadmissible in the first place, which is where this fraud waiver provision that you're relying on comes from. Well, you're right, your honor, except that this particular decision refers, it very specifically says, you'll see it at page 463, you committed fraud, you committed fraud, you committed fraud, you engaged in fraud, therefore we denied your petition. We deny your petition because of the fraud you committed. You can read it right there. And even though, yes... But even though there's, I guess, I think I'm just asking the same thing again, but the reason that Mr. Bader was charged as removable was because he didn't remove the condition on his conditional permanent residence status, and that's a different provision. That's correct. Well, actually, because it was denied, and so the condition was not waived or removed, and it was denied. What this all boils down to... What's the difference between removing a condition and having it... Well, when it's denied for fraud, and which very clearly was the case here, at a very minimum, somebody was found... Somebody who finds themselves in removal proceedings should have the opportunity to apply for a waiver for fraud. Judah Lang v. Holder, the Supreme Court, scolded the government, it was a 212C case, for really essentially saying that this all comes down to a sport of chance. Depending how the government charges the person, such as how they charged him here, they may or may not be eligible for a waiver. But the Supreme Court found that that's a violation. Sorry. Wouldn't it be perverse here though for Mr. Bader to be eligible for this fraud waiver provision because he committed marriage fraud? I think that's the argument you're making. Well, there's other waivers for fraud, there's other waivers for criminal acts, there's waivers for different... Well, I guess in contrast to another petitioner to remove their condition on their resident status for good faith reasons, would not be eligible for the fraud waiver. Well, if there was good faith and there was actually fraud, then they would be looking at a fraud waiver, they would not utilize the good faith mechanism, which they can apply for because the act at section 216 allows for a good faith waiver. They can seek that. However, the issue here is, I really see that whereas the Supreme Court said in ERICO V.I.N.S. that this should be a very broadly applied waiver. They were talking about old section 241 F that was rewritten to 237 A1H, that it is a humanitarian gesture because Congress wants to keep families together. This should be broadly applied. There's nothing, absolutely nothing in 237 A1H that prevents him from obtaining this type of relief. And in fact, it reads very, very expansively as the Ninth Circuit said in Vasquez and as the Seventh Circuit said in Acqua Recession. So it seems to me your argument, there's sort of two steps that you need to persuade us. One is to follow the Vasquez decision and say that the A1H fraud waiver applies to removability on any of the preceding listed grounds to the extent that the removal is based on fraud at the time of the admission or adjustment of status. Yeah. All right. And so that's the legal piece. And then the factual piece, and this is also one I'm struggling with, is to interpret the termination of status here as resulting from fraud at the time of adjustment as opposed to a failure to file a joint petition, right? I mean, in other words, Vasquez didn't displace Gowaron, I'm not sure how to say it. No. So you've got to thread the needle by saying, no, he didn't lose his conditional status because he was unable to file a joint petition because the requirement, the department didn't file, the joint petition requirement because he didn't show good faith, right? That's one scenario that I think, I guess the question is, isn't that Gowaron or Gowaron? Gowaron. So how do you think, do you have to, in every case where somebody's terminated on the A1D basis, look behind the termination of status and figure out whether it functionally resulted from a fraud, or is there something about the findings in this case that get you away from a case-by-case assessment? How do you do that? I think very clearly here, the decision that DHS issued in July of 2016, which says in two, three, four different places that he's denied because of fraud, puts it squarely within the fraud web. And he's denied what? He's denied the good faith waiver or he's denied his petition on the merits? They're saying that he's ineligible for a good faith waiver and that his conditional residence is terminated. The board never acknowledged that in its decision, that that's exactly where the agency terminated his conditional residence. Not back in 2013 or any such time, but in 2016 after all this came to light. And I mean, the decision is what it is. The board comes again and tries to differentiate Vasquez from this, and it labors to do so. And it relies very heavily on Gowaram. But the essential fact here is they got it wrong. This decision denies the I-751 because of fraud, very simply because of fraud. So, you know, taking them at their own word, if they're going to deny it because of fraud, then they should offer him a fraud waiver, which is readily available to him, I think. Oh, am I beyond my time? You've reserved a few minutes for a while. Okay. Thank you. Thank you so much. We'll hear from the government. May it please the court. Jacqueline Hagner on behalf of the Attorney General. The plain language of the fraud waiver is clear. It applies only to grounds of removal based on inadmissibility. That is simply not what we have here. Petitioner's grounds of removal were based on his failure to file a joint petition. I'll turn to petitioner's emphasis on the July 2016 denial letter that as petitioner submitted, had a strong emphasis on fraud. That is clear in the letter that they suspected petitioner of marriage fraud. The problem is we have to look at the timeline here. Even at that point in July 2016, petitioner had not yet admitted to marriage fraud and his ex-wife also submitted a sworn statement explicitly denying marriage fraud. She said that their marriage was in good faith. But didn't that July 12, 2016 decision make a finding of marriage fraud? It did. It did. But the next step, Your Honor, is to then decide how to charge petitioner. How is the DHS going to prove marriage fraud in immigration court? So do we have to go your way part ways from the Ninth Circuit? Are you asking us to reject the legal analysis in Vasquez and conclude that the only grounds of removal that could potentially trigger the fraud waiver, I guess, is the A1A? What about A1G? Isn't A1G also about fraud at the time of adjustment of status? Wouldn't that also fit squarely in the language? Right, Your Honor. I'll answer your first question about whether or not to reject Vasquez. No, I don't think you need to reject Vasquez. Vasquez, I would say the ultimate holding in Vasquez is that the two charges on that charge sheet required DHS to prove marriage fraud. For that reason, Vasquez, the Ninth Circuit, found that to be not in line with Goran. Well, I'm confused. I thought Vasquez involved a termination of, a removal on account of termination of the conditional status. And so that wouldn't necessarily require you to prove fraud. There might be all sorts of reasons why you don't get your conditional status. And instead, the court went behind that and said, well, in this case, the reason that it terminated was because of an express finding of fraud at the time of adjustment, which fits within. Isn't that essentially what this is? Very close, Your Honor, except for in Vasquez. So you are correct. It was the conditional permanent resident status was terminated. But if you look at Vasquez, Vasquez does explain that the allegation supporting that charge was marriage fraud. In essence, on the notice, in the NTA, it charged fraud. Fraud was in the charging document. That is absent here. In this case, there is absolutely no fraud required to prove his removability. It was purely because his wife withdrew her support for their joint petition on June 26, 2013, far before any allegations or charges of marriage fraud in this case. But when I read the July 12, 2016 decision, it doesn't say we're terminating your status because of your inability to file a joint petition as required within the 90 days of the two-year mark. I read it as very clearly saying you've applied and we're rejecting it essentially on the merits based on our finding of fraud. Yes, and a couple of distinctions. I agree with your reading of the 2016 denial letter and that it was a denial of a good faith waiver. So basically, it's a very fine distinction here. You're only eligible to apply for a good faith waiver if you cannot meet the joint filing requirement. So in essence, because you're asking for a good faith waiver, you already are conceding that you can't meet the joint petition requirement. Can I? So when I look at it, it says, upon consideration, it is ordered that your application to remove the conditional basis of your permanent residence status be denied for the following reasons. Then it says your application is denied again. And the application that they're talking about is not an application for a good faith waiver of the joint filing requirement. It's an application to remove the conditional basis. I understand it to be an application for a ruling on the merits. And I don't see anything in that decision that says, oh, well, we're not going to get to that because you haven't even filed a joint petition because you haven't persuaded us that you're eligible for the good faith waiver. That's what I'm looking for from that. Am I missing something? No, you're not missing anything, Your Honor. And I will concede that the letter could be a little more clear in guiding us through that. And also, noticeably not in the letter is that by operation of law, his status was terminated on June 26, 2013, when his wife withdrew her support for her joint petition. That is not in the letter. That is something that the board brings out later on. And the board explains that no matter what, that when she withdrew her petition, and again, that's found in the INA section 216, also in the CFR. It's cited in our brief, the law that supports that proposition. But the NTA, right, which is sort of the touchstone for this analysis on your view, doesn't say what you just said. It doesn't say your status terminated by operation of law way back when. It says your status was terminated on July 12, 2016, because your I-71 was denied. And that takes us exactly to this document that you and I are just talking about. So I understand that history could have unfolded in the way that you're describing by operation of law. But it's hard for me to see how, if we're using the NTA as a touchstone, we get to go behind the NTA and say, oh, despite the way they've charged it, there's another reason why it doesn't fit the Vasquez framework. Right. And I, again, will agree with you that the date contained in the NTA is the date of the denial letter that rests heavily on fraud. However, that letter does also mention that his ex-wife withdrew her petition. And I guess what I would just emphasize is that it was a matter of prosecutorial discretion for DHS to decide not to allege fraud. So in that same document, in the NTA that you're discussing, nowhere in there does it discuss fraud. It says that his wife did not file a joint petition, which is a proper grounds for removal under the INA that does not require any proof of fraud. Can you just set me to rule for you? Say, no, no, no, you don't have to. You do drop a footnote that reminds us that we're not bound by Vasquez. And I would say the thrust of your arguments on the law maybe points in another direction. Are you asking us to part ways from the Ninth Circuit on Vasquez? Again, Your Honor, I don't think you have to here. I think that a decision on this court would be consistent with Vasquez if it said something to the effect of, if the allegation in the NTA does not flow from a finding of fraud or does not require proof of a finding of fraud, then the fraud waiver does not apply. And I think that I could almost quote the Vasquez decision, is that both charges in Vasquez directly flowed from one decision from the Attorney General that found fraud. That is just simply not the case here. I don't think that this case has to part ways with Vasquez. And in fact, I think it's actually very consistent with Vasquez. In fact, Vasquez affirmed Garan and said we're still following the same reasoning in Garan, where fraud has to be alleged and it has to be a ground of inadmissibility. So you're trying to give us a way not to create a circuit or to, I guess, deepen a circuit split. I take it the opposite would be true as well, that if we were to grant the petition, we would be creating a split. We would be departing from the third and eighth circuits in Tima and American Dollars. Yes, Judge Park, I believe. Actually, I think it's beyond that. I think there are five other courts that are going the way of our position. I think off the top of my head, it's three, the third or the fifth. In fact, the ninth, I think, supports this as well. And when you say departed, I mean, there's sort of the generic analysis that comes up when somebody is convicted of a crime involving moral turpitude, and there's a question about the fraud waiver there. Is there any other circuit that's dealt specifically with termination of status under A1D that derives from a finding on the merits of fraud at the time of adjustment of status? Is there any other circuit besides the seventh and the ninth that have dealt with that scenario? I don't believe so, Your Honor. And I think if I understand your question correctly, every circuit that I've researched on this issue, there has always been fraud alleged or inadmissibility in the removal charge. I'm nearly confident on that. Right. And so I guess, see, my time is near expiring, so I'll sort of wrap up here because I think my summation references the concern with Vasquez. I think that what's important to distinguish here, again, is what evidence the agency had before when it charged Petitioner. And it certainly had evidence of marriage fraud, but that doesn't mean that it felt confident that it could prove that immigration court. And again, I will emphasize that DHS did not know that Petitioner committed a marriage fraud for certain until he admitted it during the proceedings. At that point, his ex-wife had denied it. He had denied it. And so it's the prosecutorial discretion in that sense that the agency decided to move forward on something that it was confident that it could prove, which is the failure to file a joint petition, which here occurred on June 26, 2013. And again, that is far beyond or far prior to any evidence of marriage fraud that was ever brought to light. So for the foregoing reasons and the reasons and respondents answering brief, I ask that you deny the petition for review. Thank you very much. Thank you, counsel. And your rebuttal. Yes. Thank you so much. Just a couple of points here on rebuttal. In my reading of the cases, and I went through them fairly quickly, but it seems that most of these cases that the government is citing on page 47 of the brief TEMA, Faizulina v. Holder in the sixth, Gorsh v. Holder in the criminal case, they are people who are criminally charged. Mr. Baddour faced no criminal charges. He's asking for a fraud waiver that fits squarely within the fraud provisions. To point out also, I would like for the court to note that Vasquez specifically said that because the fraudulent conduct provided a common basis for both grounds, the termination of conditional residency was related to inadmissibility at the time of entry, and therefore, the petitioner was eligible for a fraud waiver under 1227A1H. They say that at page 1017 of their opinion, and then they go on to say that the ability to apply for a waiver when we have fraud, such as we do here in the should not be dependent on how the respondent's designated ground of removal is charged. Now, the government says it's up to them, you know, but Judelang, a year later, a year later after Vasquez came out in the ninth, Judelang said, the Supreme Court made clear that this should not come down to a sport of chance, where somebody can apply for a waiver if they're charged one way, but not apply for a waiver which, under the section, is not otherwise limited to somebody in their situation because they committed fraud, but they can apply for it simply because they weren't charged that way. That just seems highly unfair. That's my report. Thank you, counsel. Thank you so much.